An important issue or an important fact is that claimant of the patent issue was allowed over the prior reference DE-979. How do we pronounce your name? Gwen. Gwen, thank you very much. And DE-979 is otherwise known as Holland. And I would ask the court if it's okay if I say Holland rather than DE-979. Two syllables versus six. I'm a stutterer. Easy to say. A soft consonant and a hard consonant. Well, we'll get the point. Okay, great. So, the fact that this was allowed both issues on appeal and affects claim construction. There are two issues on appeal. Whether Zettler raises a substantially new question of patentability relative to Holland. And two, whether Zettler anticipates claims 1, 2, and 4 of the 561 patent that's at issue. If patentee wins on either issue, the board's decision must be reversed and re-examination should be issued upon the claims. The first issue, whether there's a substantially new question of patentability, turns on whether the use of the phrase thin sheet casing in Zettler is sealed around the edges, discloses any more about stiffness and rigidity. The stiffness and rigidity limitation which was added to overcome Holland. Then the two pieces of oil impervious film bonded to one another at welded seams of Holland. Isn't the problem in this case that the plain language of claim 1 doesn't specify how much rigidity or stiffness is required? Well, I argue during prosecution that that means that it at least is enough to increase the stiffness and rigidity of the overall sheet. If you were to look at the substrate by itself, and then add two sheets, and then test the stiffness again, if the resulting stiffness of the overall construction is more than the substrate in the middle by itself, then we argue that it would provide stiffness. How is that different than what Zettler discloses? Zettler doesn't disclose anything about stiffness and rigidity. He's entirely silent, just like in... It provides for mechanical stiffness and rigidity. What's that? It provides for a casing that provides mechanical stiffness. Zettler doesn't say that. At the end of the appellee's brief, they make that assertion that Zettler teaches stiffness and rigidity, but that's simply not in the record. There was no evidence to support that assertion. And that kind of highlights the overall weakness of the office's position, that they've never shown any evidence, not even a scintilla of evidence in support of that conclusion. But the interpretation that I just offered, that stiffness and rigidity of the shell layers must increase the overall rigidity of the overall construct, that was adopted by the board. It wasn't adopted by the examiner below, but it was adopted by the board in their initial decision. They said that they had agreed with the appellant that providing stiffness and rigidity means that it must increase stiffness and rigidity. So it does exclude sheets that are not capable of increasing stiffness and rigidity. Both references, Holland and Zettler, fail to disclose either the material that is used to make the outer thin sheet or film casing. They fail to disclose the thickness of those sheets. And also, most importantly, they fail to disclose anything about what the relative stiffness and rigidity of those sheets is, relative to the underlying substrate. So you're really left to wonder, you're left to guess. The substrate of Zettler is the woven sheet material. They can have varying thickness, depending on how much of the lubricant you want to add. DE 979 says that they can use paper or paperboard, which is also a varying thickness. So I would argue that Zettler and DE 979 teach about the same thing. A woven or paper sheet that can change thickness. And they teach in oil impervious sheets that go on the outside to seal in the lubricant. And apart from that, I mean, they're the same there. And apart from that, they're exactly the same in the sense that they teach nothing about stiffness and rigidity. The second issue, anticipation. So that has to do with the fact that they're exactly the same, I would argue, and that Zettler does not raise a substantial question of patentability. The second issue, anticipation, turns on whether, quote, thin-sheet casing of Zettler, whether it inherently adds additional stiffness and rigidity to the overall layered sheet construct compared to the woven sheet material of Zettler by itself. What's the benefit of additional stiffness and rigidity? What does the record show about that? So the benefit would be, if you're trying to feed a sheet into a shredder, whether or not this is stiff or rigid might determine whether it's easy to feed into the slot, and as argued below in the first prosecution, whether or not it helps push debris through the cutting edges. If it's not sufficiently stiff, the corners might bend down. It might be hard to get it into the slot in the first instance. And we do disclose materials that could comprise the substrate that could be very flimsy, like we talk about tissue paper or other materials. So why wouldn't it be obvious to stiffen it if you're having trouble feeding it in? Well, the issue here is, I mean, that's a great question, but the issue here only turns on whether it's anticipated because that's the only objection up on appeal relative to Claim 1. So I'm not really prepared to discuss obviousness, but I guess whether something's obvious is what would a court-ordered seal have understood from the reference. And these references are silent with respect to stiffness and rigidity, so I think you're left to wonder. And perhaps people hadn't considered that problem. If you don't consider a problem, you often don't even think of a solution. So the sum total of Zettler is we have a thin sheet casing, and we have a woven sheet material, and they're put together to form a packet that provides lubrication. That's the sum total of the disclosure. And there's a dispute about who bears the burden of proving or disproving whether Zettler's thin sheet casing inherently provides stiffness and rigidity. But we would say, in the end, it doesn't matter who bears the burden. If the office bears the burden of showing inherent anticipation, under the appropriate rules, they have to provide evidence or sound technical reasoning. They haven't provided any evidence, and they haven't provided any technical reason. All they've said is, and this is in the final decision, in the final office action, all materials have some level of stiffness and rigidity, therefore the claims are anticipated. I argue that that just read the limitation out of the claim, and it kind of flies in the face of the fact that these claims were allowed overhauling because they have shell layers, but they evidently weren't stiff enough to anticipate the claim or render it obvious because there's a lot over it. The patent office engaged in this effort really just said, we don't have to show anything, we can just say it. And then when pressed in their appellate brief, they decided to provide what they believe is an example in Zettler of shell layers that provide stiffness and rigidity. At page 24, they said, Zettler's three-ply arrangement of sheets could include a casing made of two of the three sheets, all of which could be the same material and the same thickness. And if you had a three-sheet construct, same material, same thickness, it wouldn't necessarily provide mechanical stiffness and rigidity. That's the only evidence they've offered in support of an inheritance argument. But that is not a valid example. It's not taught in Zettler. And in fact, Zettler, you can't make that construct. Zettler has a woven sheet material in the middle. A woven sheet material is like paper. It absorbs oil. The purpose of this is to act as a sponge to absorb oil. The outer shell casings are intended to seal the oil in. A likely material would be plastic. So it's highly unlikely that you would ever have three sheets that are the same material. One has to be absorbent, one has to be non-absorbent. And it's also not that they have the same thickness, because the substrate layer or the woven material in Zettler changes. It can be thin, it can be thick, depending on how much oil you want to deliver to the cutting blades. And so the likelihood of it ever having the same thickness as the thin sheet, the outer casing, is purely speculative. And it might happen once in a blue moon. But it may not happen ever. The word claims that the examiner shifted the burden to the patentee to disprove anticipation, to disprove that there was no inherency. And so Pat, he actually went above and beyond what he believes was his duty and did comparative testing. Did a test where he used a horizontal test, using gravity as a constant force, and tested the relative stiffness of a substrate by itself and the overall construct with the shell layers and found that there were several shell layers that are made of polymer materials that fall within the scope of Zettler and also Holland that didn't provide stiffness and rigidity and submitted that evidence. That's the only evidence in the record. We provided evidence, the office has only provided a hypothetical, which is patently false. The submitted test shows several examples of casings that did not provide or increase stiffness and rigidity and even one example is enough to defeat inherent anticipation because we picked something that falls within the scope, it doesn't work. We have no other guidance as to what to select. The board and the examiner has never told us what to select. They just said, well, you've got to select something. We won't tell you what it is, but we don't like your test. I think it was a valid test. There's nothing wrong with your test. Here, Mr. Gwynne, you're into your rebuttal time. Do you want to say that? I'll just make one more point here. I believe there is an unresolvable contradiction in the board's arguments relating to anticipation and the question of patentability. For anticipation, the examiner and the board have argued that all thin sheets and films have at least some level of stiffness and rigidity and therefore, they're inherently to anticipate the claims. They couldn't identify any that wouldn't anticipate and that's the reason I underlined that. But in the substantial question of patentability, at the end of the brief, they finally make the admission. I've been asking for the whole case and finally, at the end of the day, on page 30, the office finally admitted that the thin sheet casing of DE-979 or Holland did not provide stiffness and rigidity. I was really surprised because all during the prosecution, I kept asking the examiner, isn't that so? And he wouldn't admit it, but they finally admitted it. Now we have the admission and a bold statement that Zettler does provide stiffness and rigidity and that Holland doesn't, but that's a contradiction because that would contradict the idea that all sheets inherently do it, but Holland doesn't inherently do it and it made it by the office. Thank you. Mr. Wiedenthaler? Thank you, Your Honor. May it please the Court. I'll start with the substantial question issue because Mr. Quinn started with that issue as well. There's no dispute here that Zettler was a new reference before the PTO. The only issue is whether it was cumulative and that cumulative exception to the substantial new question of compatibility issue is extremely narrow and set forth in the MPP. It is consistent with Congress' views in establishing the SNQ standard and in the Portola, when Congress overrode Portola, the legislative history there made clear that Congress is really concerned about two things. One is correcting the U.S. PTO's errors on patentability and two is harassment and there's no question of harassment here. Buttercup filed a patent infringement suit. Shortly thereafter, the third-party requester came in and asked the PTO to resolve a substantial new question of patentability. That's exactly what Congress intended when it created READS to allow people accused of infringement of patents to have the question of patentability and validity resolved in front of the U.S. PTO. And why is it that Zettler's not cumulative? Zettler's not cumulative because it offers different teachings. The standard in the MPP is that the new reference has to substantially reiterate verbatim the old reference's teachings and here the teachings are different. Zettler teaches a three-ply arrangement of thin sheets. It discloses various types of sheets as the board found and those sheets are all very thin. It doesn't disclose something thick like paperboard as in DE-979 and that is enough to overcome the SNQ hurdle as the board found at page 824 in the re-hearing decision. I'll turn to the merits defender for the questions on their first issue. The examiner's and board's findings on inherency are correct. Here, when one looks at the materials disclosed in Zettler and the arrangement disclosed in Zettler, it's very, very similar to what's disclosed in Buttercup's patent. The three thin sheets all arranged in a packet that is then run through a shredder. And what the examiner and then the board found is almost any sheet that you use when two sheets are combined with an inner layer and they're roughly the same thickness, any time that is run through a shredder, it's going to help the lubrication substrate move through the shredder. And the Buttercup tried to come back with a declaration, but that declaration was flawed for several reasons. One is it didn't establish that all materials within Zettler did not inherently anticipate. It just picked and chose materials, depending on whether or not it satisfied the SAG tests that Mr. Allen was testing, decided either it was within the test. And where did Zettler's materials fall from the test? There were no materials tested by Mr. Allen that are akin to those in Zettler. I want to make that clear from the outset. But what Mr. Allen did was he would take a set of materials, perform a SAG test on them, and if they SAG'd more or the same with the lubrication substrate without the shell and the lubrication substrate with the shell SAG'd either the same or more, it said that is in Zettler. It didn't bother determining before it ran the test whether this was something that was akin to what was disclosed in Zettler. It just said, oh, well, it doesn't increase mechanical stiffness and rigidity. It must be in Zettler because it falls outside the scope of my claims. Now, if the test showed that the shell layers did increase mechanical stiffness and rigidity under the SAG test, it would be deemed something that fell within the scope of the claims. And the tests don't bear out or don't match with the teachings of what's in Buttercup's patent. For example, samples 9 and 10, sample 9 teaches a lubrication substrate with a cellophane shell layer, and that was deemed to be within the scope of Buttercup's claims. Sample 10 was the same thing. It just had a polyethylene outer casing instead of a cellophane outer casing. That was deemed outside of the scope of Buttercup's claims. The problem with that is claim 5, which depends from claim 1 in its issue and reexamination, claims cellophane. Claim 6, which also depends from claim 1, claims polymeric materials. And the polyethylene that failed the SAG test is a polymeric material. So there's no indication from Buttercup's patent, even from the disclosure or the claims, that this would fall outside the scope of its claims. The only reason that Mr. Allen determined that it fell outside the scope of the claims was because it failed the SAG test. So basically what the board was saying here is that any amount of mechanical stiffness or rigidity satisfies the claim. Right. If the claim doesn't recite a particular amount that's above and beyond the board's head, it does have to increase. But an increase by any amount that allows it to be fed more easily through a shredder would be sufficient. And with the vast majority, if not all materials, that's true. And Bristol Myers-Squibb teaches us that it's not sufficient for Mr. Allen or Buttercup to come forward and establish that there is something that falls within the scope of the teachings of Zettler that may not inherently anticipate. It has to be that the natural result of most materials or many materials would end up not resulting in the property that's claimed in the new patent. If there aren't any further questions, I'll yield the remainder of my time. Okay. Thank you, Mr. McClellan. Mr. Quinn, you have three minutes and 32 seconds. Okay, thank you. Okay, so I think maybe the crux of this issue raised here was that we didn't show that all materials of Zettler didn't meet the stiffness and rigidity limitation. I think that that is an unrealistic standard. I don't know how we could test and prove that all materials of Zettler, any conceivable material doesn't satisfy the stiffness and rigidity limitation because we don't even know what those materials are. And the board has never told us what they are. And I used the testing materials that I thought most comported with my understanding of Zettler and that of the examiner. The examiner said that Zettler teaches an absorbent material. Well, paper is an absorbent material or other types of woven materials. Zettler teaches woven. I tested those. Said it needs to be an oil impervious material or film that is sealed around its edges. Well, that's what plastic is. Plastic is a classic example of something that fits the very definition of Zettler. Now, the board and the examiner tried to refer to materials in the background section of Zettler saying, well, you know, you should have tested these materials. Those were paper. Paper can't seal in oil. Foil, we don't even know what that means. Maybe foil means metal foil. I don't know why you would want to use it as a foil. You can't seal it because you can't heat seal foil. It doesn't bond to itself. Or magnetic tape, which is something, I don't know how you wrap that around. It doesn't seem plausible. So I dealt with those issues and they said, well, we don't really mean those materials. We just mean, we're not sure if you should test those materials, but we just know that the materials you did test aren't within Zettler. I don't know how they can say that. These materials are clearly within Zettler. They match. They meet the definitions of what Zettler says. So we tested the correct materials. And it's not our burden to show that all materials don't infringe. Since Zettler doesn't have one single invention, one single example, it's sufficient for us to show that only one reasonable example doesn't meet the efficiency limitation. But they can show just one. That shows that all materials don't infringe. All materials don't inherently meet it. We had several that didn't meet it. And as far as paperboard being different than a woven material, a woven material is a broad disclosure. It said it could be varying thicknesses. Paperboard is an example of a woven material of increased thickness relative to a piece of paper. A woven material is of less thickness. So it's not inconceivable that paperboard is a woven material of Zettler. And those are the materials that the patentee tested. The board, it acknowledged, requires that the outer layers of Zettler must provide some increase. That differs from the examiner's own basis for prima facie anticipation. He didn't say, well, the sheets of Zettler do provide some stiffness.  Therefore, reading a limitation out of the claim, it had no limiting effect because the examiner said all sheets meet the limitation. Therefore, the claims are anticipated. That was his entire argument. And that can't be true, especially in light of the new claim construction that says, well, not all sheets, most sheets. But there are sheets, such as those in Holland, that don't meet the limitation. So when you add up the fact that the office now concedes that Holland discloses a thin sheet material that doesn't fit within the definition, and they've adopted my claim construction, that shows that the inherent anticipation argument must fail because it's based on incorrect premise that all sheets must be rigid. Thank you, Mr. Grint. Thank both counsel. The case is submitted, and that concludes our session today. All rise.